<u>**NOT FOR PUBLICATION**</u>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| DANDREA PRODUCE, LLC, | HONORABLE KAREN M. WILLIAMS |
| *Plaintiff,* | Civil Action |
| v. | No. 25-14722-KMW-AMD |
| WAKEFERN FOOD CORP., | **OPINION** |
| *Defendant.* |  |

<u>APPEARANCES</u>:

MICHAEL FRANCIS O' CONNOR, ESQ.
**MCMORAN O'CONNOR BRAMLEY & BURNS**
2399 HIGHWAY 34
SUITE D-1
MANASQUAN, NJ 08736

*Counsel for Plaintiff*

ANTHONY ARGIROPOULOS, ESQ.
MAXIMILIAN DE CUYPER CADMUS, ESQ.
THEODORA T. MCCORMICK, ESQ.
ROBERT LUFRANO, ESQ.
**BAKER DONELSON**
281 WITHERSPOON STREET
3RD FLOOR
PRINCETON, NJ 08540

*Counsel for Defendant*

**WILLIAMS, District Judge:**

## I.    INTRODUCTION

This matter comes before the Court upon Defendant Wakefern Food Corp.'s ("Defendant") Motion for Judgment on the Pleadings (Dkt. No. 15) pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff Dandrea Produce, LLC ("Plaintiff") asserts claims for breach of oral contract, promissory estoppel, quasi contract, breach of a Pricing Letter Agreement ("PLA"), and violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.* (*See generally* First Amended Complaint ("FAC"), Dkt. No. 1-25.) Defendant moves for judgment on all claims asserted in the FAC and also seeks declaratory relief concerning the parties' obligations under the PLA and the enforceability of the alleged oral promise.

For the reasons set forth below, Defendant's Motion is **GRANTED.**

## II.    BACKGROUND

Plaintiff is a produce supplier. Defendant is a retailer-owned supermarket cooperative. (FAC ¶¶ 1-2.) Plaintiff alleges that it supplied produce to Defendant for many years before the events giving rise to this litigation. (FAC ¶ 3.)

According to the FAC, Defendant historically allocated portions of its annual local produce orders to suppliers before the start of the growing season. (FAC ¶¶ 4-7.) Plaintiff alleges that, beginning in or about 2019, Defendant used a more formal request-for-proposal process under which suppliers accessed projected product volumes through an electronic portal and then submitted bids. (FAC ¶¶ 8-13.) Plaintiff further alleges that the bidding process generally took approximately two months and that requests for bids needed to be sent in December so that suppliers would know what to plant before the local growing season began. (FAC ¶¶ 12-13.)

Plaintiff alleges that Defendant did not issue a timely request for proposal for the 2023 local growing season. (FAC ¶¶ 17-19.) According to Plaintiff, on March 5, 2023, Defendant's Procurement Manager, Tom Paragham, called Plaintiff and explained that Defendant had not yet sent out bids. (FAC ¶ 20.) Plaintiff alleges that Paragham asked Plaintiff to commit to supplying approximately eighty percent of Defendant's total produce needs for the 2023 local growing season, and that Plaintiff agreed and began planting accordingly. (FAC ¶¶ 21-22.)

Defendant later issued bid invitations to potential suppliers, including Plaintiff. (FAC ¶ 23.) Plaintiff submitted bids and later participated in a second round of bidding. (FAC ¶¶ 24, 29-34.) Plaintiff alleges that, during this period, Defendant representatives continued to assure Plaintiff that it would be Defendant's main supplier and would receive approximately eighty percent of the produce orders relating to the request for proposal. (FAC ¶¶ 35-40.) Plaintiff contends that it continued planting and holding produce in reliance upon those assurances. (FAC ¶¶ 40, 48, 53.)

The parties subsequently executed the PLA. (FAC ¶ 52.) The PLA states that its purpose was to confirm the parties' mutual understanding concerning certain agreed-upon pricing and volume terms for the goods and merchandise set forth therein.[1] (PLA at 1, Dkt. No. 15-4.) Section 4 of the PLA expressly provides: "[Defendant] makes no volume guarantee in connection with the Product(s) and the Product Pricing provided in the Exhibits are not contingent upon any required volume unless the parties agree otherwise in an Exhibit." (*Id.* § 4.) The PLA further provides that it "contains the entire agreement between the parties" and "supersedes and replaces any prior

---

[1] In deciding a Rule 12(c) motion, the Court may consider the pleadings, exhibits attached thereto, matters of public record, and documents integral to or explicitly relied upon in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Because Plaintiff's claims expressly rely upon the PLA, the Court may consider the PLA without converting Defendant's Motion into one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (recognizing that a court may consider an "undisputedly authentic document" on which a plaintiff's claims are based).

agreement and understandings between the parties, either oral or written," concerning the subject matter of the PLA. (*Id.* at 3.)

Plaintiff alleges that Exhibit A to the PLA contained a specific volume guarantee and pricing for more than 200 produce items. (FAC ¶ 45.) Defendant disputes that characterization and contends that Exhibit A contains product and pricing information but no guaranteed minimum purchase quantities. (Answer ¶¶ 44-45, Dkt. No. 7.) Plaintiff further alleges that, contrary to Defendant's alleged oral promises to purchase eighty percent of its produce from Plaintiff, the PLA contemplated only thirty percent of Defendant's conventional greens volume and thirty-five percent of Defendant's organic greens volume. (FAC ¶ 46.) Plaintiff nevertheless signed the PLA. (*Id.* ¶ 52.)

Plaintiff alleges that, based on Defendant's verbal commitments to allocate eighty percent of its produce orders to Plaintiff, it planted and held 439,352 cases of produce. (*Id.* ¶ 53.) Plaintiff further alleges that, had Defendant purchased that amount of produce, Plaintiff would have realized revenue in excess of $8,000,000. (*Id.* ¶ 54.) Plaintiff alleges that the total volume set forth in the PLA was 120,924 cases and that, had Defendant purchased that amount of produce, Plaintiff would have realized revenue in excess of $2,800,000. (*Id.* ¶¶ 55-56.) Plaintiff alleges that Defendant ultimately purchased only 15,402 cases, or approximately 3.5 percent of the amount that Plaintiff had planted and held for Defendant. (*Id.* ¶ 57.)

Based on those allegations, Plaintiff asserts claims for breach of oral contract, promissory estoppel, quasi contract, breach of the PLA, and violation of PACA. Defendant answered and asserted counterclaims, including a breach of contract counterclaim and requests for declaratory judgment concerning the PLA and the alleged oral promise. (Answer and Counterclaims ¶¶ 22-34.) Defendant now moves for judgment on the pleadings.

4

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only where the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).

The standard governing a Rule 12(c) motion is the same as that applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Thus, the Court must accept as true all well-pleaded factual allegations and construe those allegations in the light most favorable to the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court need not accept unsupported legal conclusions or conclusory allegations couched as factual assertions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To survive a Rule 12(c) motion, the pleading must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible where the pleaded facts permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. A pleading that offers only labels, conclusions, or naked assertions devoid of further factual enhancement does not suffice. *Id.*

## IV.    DISCUSSION

### a.    The Law of the Case Doctrine Does Not Bar Defendant's Motion.

Plaintiff first argues that Defendant's Motion should be denied under the law of the case doctrine because the Superior Court of New Jersey previously denied Defendant's motion to

5

dismiss the original complaint and later granted Plaintiff leave to amend to add a PACA claim. (Pl.'s Opp. Br. at 32, Dkt. No. 17.) Plaintiff contends that Defendant is merely reasserting arguments that were already rejected. (*Id.*) Defendant responds that the doctrine has no application because this Court is considering a different pleading, under a different procedural rule, and under the federal pleading standard. (Def.'s Reply Br. at 2-4, Dkt. No. 20.)

The Court agrees with Defendant. The law of the case doctrine generally directs courts to refrain from reconsidering issues already decided in the same litigation. *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994). The doctrine, however, "does not limit a federal court's power; rather, it directs its exercise of discretion." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997). Courts may revise interlocutory rulings before entry of final judgment. *State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016); *see also* Fed. R. Civ. P. 54(b).

Here, the prior state-court rulings do not foreclose Defendant's present Motion. The operative pleading is the FAC, not the original complaint addressed by the Superior Court. The FAC added a federal PACA claim, which formed the basis for removal. (FAC ¶¶ 75-92.) In addition, this Court applies the federal pleading standard under Rules 12(c) and 12(b)(6). That standard requires the plaintiff to plead a plausible claim for relief under *Twombly* and *Iqbal*. *See Wolfington*, 935 F.3d at 195. New Jersey's Rule 4:6-2(e) standard is not identical to the federal plausibility standard. *See Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 232 (D.N.J. 2021) (noting that New Jersey's dismissal standard differs from the federal *Twombly* and *Iqbal* standard).

Accordingly, the Court will consider Defendant's Motion on the merits.

### b.  Count I - Breach of Oral Contract

Defendant argues that Plaintiff's oral contract claim is barred by the Statute of Frauds because the alleged oral agreement concerned the sale of produce worth far more than $500 and was never memorialized in a signed writing. (Def.'s Mot. Br. at 8-11, Dkt. No. 15-1.) Defendant further argues that, even if an oral promise had been made, the parties later executed the PLA, which expressly superseded prior oral understandings and disclaimed any volume guarantee absent an express agreement in an exhibit. (*Id.* at 12-14.) Plaintiff responds that the Statute of Frauds does not bar its claims because it relied on Defendant's promises, partially performed by planting and holding produce, and may be able to elicit admissions from Defendant through discovery. (Pl.'s Opp. Br. at 25-26.)

The Court finds that Count I fails as a matter of law. New Jersey's version of UCC § 2-201 provides that "a contract for the sale of goods for the price of $500 or more is not enforceable" unless there is a writing sufficient to indicate that a contract for sale was made and signed by the party against whom enforcement is sought. N.J.S.A. 12A:2-201(1). The Statute of Frauds exists to prevent enforcement of significant commercial obligations based solely on uncertain or disputed oral representations. *See Moynihan v. Lynch*, 250 N.J. 60, 79 (2022). Courts applying New Jersey law routinely dismiss oral contract claims concerning the sale of goods where the plaintiff cannot identify a signed writing satisfying § 2-201. *See Cal. Natural, Inc. v. Nestle Holdings, Inc.*, 631 F. Supp. 465, 471-72 (D.N.J. 1986); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 860-61 (3d Cir. 1994).

The allegations of the FAC place the alleged oral agreement squarely within the Statute of Frauds. Plaintiff alleges that Defendant orally agreed to purchase approximately eighty percent of its produce needs for the 2023 local growing season. (FAC ¶¶ 20-22, 35-40.) Plaintiff further alleges that, had Defendant honored that promise, Plaintiff would have realized revenues

7

exceeding $8,000,000. (FAC ¶ 54.) Those allegations concern a contract for the sale of goods worth millions of dollars. Yet Plaintiff identifies no signed writing in which Defendant agreed to purchase eighty percent of its produce from Plaintiff.

Nor do Plaintiff's allegations plausibly establish an exception to the Statute of Frauds. Plaintiff alleges that it planted and held produce in reliance on Defendant's assurances. (FAC ¶¶ 40, 48, 53.) But Article 2's partial-performance exception applies only to goods that have been paid for and accepted or received and accepted. N.J.S.A. 12A:2-201(3)(c). Plaintiff does not allege that Defendant accepted or paid for the additional produce that forms the basis of the alleged oral contract. Plaintiff likewise does not plausibly allege specially manufactured goods under N.J.S.A. 12A:2-201(3)(a). The produce at issue—leafy greens and related conventional produce—was not alleged to be uniquely manufactured or unsuitable for sale to others in the ordinary course of business. (*See generally FAC.*)

Plaintiff's argument that discovery may uncover admissions by Defendant also does not save Count I. Section 2-201(3)(b) applies only where the party against whom enforcement is sought admits in pleadings, testimony, or otherwise in court that a contract was made. N.J.S.A. 12A:2-201(3)(b). Defendant expressly denies entering into the alleged oral agreement. (Answer ¶¶ 20-22, 35-40.) A speculative future admission cannot defeat a Rule 12(c) motion where the pleadings presently establish that the alleged contract is unenforceable.

The subsequently executed PLA independently forecloses Count I. The alleged oral agreement and the PLA concern the same commercial subject matter: Defendant's purchase of produce from Plaintiff for the 2023 local growing season. The PLA expressly provides that Defendant "makes no volume guarantee" unless the parties agree otherwise in an exhibit. (PLA § 4.) The PLA also contains an integration clause stating that it supersedes and replaces prior oral

8

and written agreements concerning the PLA's subject matter. (PLA at 3.) Under New Jersey law, a later integrated agreement supersedes prior inconsistent oral understandings. *See Conway v. 287 Corp. Ctr. Assocs.*, 187 N.J. 259, 268-70 (2006); *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J. Super. 570, 573 (App. Div. 1991).

Accordingly, because the alleged oral contract is unenforceable under the Statute of Frauds and superseded by the PLA, Defendant is entitled to judgment on Count I.

### c.  Count II - Promissory Estoppel

Defendant argues that Plaintiff's promissory estoppel claim fails because the alleged promise concerns the same subject matter as the PLA and directly contradicts the PLA's express no-volume-guarantee provision. (Def.'s Mot. Br. at 10-11.) Defendant further argues that Plaintiff cannot plausibly establish reasonable reliance after knowingly executing an integrated agreement disclaiming guaranteed purchase volume. (*Id.* at 12-14.) Plaintiff responds that promissory estoppel may be pleaded in the alternative, that Defendant's repeated pre-PLA assurances induced Plaintiff to plant and hold produce, and that enforcement of the promise is necessary to avoid injustice. (Pl.'s Opp. Br. at 17-21.)

The Court finds that Count II fails as a matter of law. To plead promissory estoppel under New Jersey law, a plaintiff must allege: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 194 N.J. 223, 253 (2008); *see also Goldfarb v. Solimine*, 245 N.J. 326, 339-40 (2021). The reliance element is critical. A plaintiff cannot establish promissory estoppel based on reliance that is unreasonable as a matter of law.

9

Plaintiff relies heavily on cases recognizing promissory estoppel where a defendant's representations foreseeably induced reliance before a formal agreement was finalized. In *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, the Appellate Division reversed summary judgment where the plaintiff alleged that casino representatives repeatedly assured it that a lease would be forthcoming, causing the plaintiff to vacate its existing premises and lose its business location. 307 N.J. Super. 461, 464-70 (App. Div. 1998). Likewise, *Goldfarb* recognizes that promissory estoppel may provide reliance-based relief where a clear promise induces substantial action or forbearance. 245 N.J. at 339-40.

Those authorities are materially distinguishable because this case includes a later integrated written contract that expressly negates the alleged promise. Courts applying New Jersey law routinely dismiss promissory estoppel claims where a valid written agreement governs the same subject matter. *See Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 141 (D.N.J. 2020); *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 454-55 (D.N.J. 2012). Those cases recognize that a plaintiff may not use promissory estoppel to obtain contractual rights that are inconsistent with the parties' integrated written agreement.

That principle applies here. Plaintiff alleges that Defendant repeatedly represented that Plaintiff would receive approximately eighty percent of Defendant produce business for the 2023 local growing season. (FAC ¶¶ 20-22, 35-40.) But Plaintiff also alleges that it later executed the PLA after reviewing its terms. (FAC ¶¶ 45-52.) The PLA expressly states that Defendant "makes no volume guarantee" absent an agreement contained in an exhibit. (PLA § 4.) The PLA further states that it supersedes prior oral and written understandings. (PLA at 3.) Plaintiff affirmatively alleges that the PLA is binding and enforceable. (FAC ¶ 71.) Plaintiff also alleges that it knew, before signing the PLA, that the agreement reflected only thirty percent to thirty-five percent of

10

Defendant's anticipated volume rather than the alleged eighty percent oral commitment. (FAC ¶¶ 45-46.) Under those circumstances, continued reliance on prior oral assurances was not reasonable.

Plaintiff's allegations of economic pressure do not alter the result. Plaintiff alleges that it had already planted and held produce before the PLA was finalized and that it signed the agreement because it had "no other option." (FAC ¶¶ 48, 52-53.) But the FAC does not plausibly plead actionable economic duress. Economic duress requires wrongful conduct that deprives a party of the exercise of free will and leaves no reasonable alternative. *Continental Bank of Pa. v. Barclay Riding Acad., Inc.*, 93 N.J. 153, 176-77 (1983). Plaintiff does not allege threats, concealment, fraud in the inducement, or any conduct sufficient to invalidate the PLA. Instead, Plaintiff seeks simultaneously to enforce the PLA and to obtain through promissory estoppel the very volume guarantee that the PLA expressly disclaims.

Accordingly, the Court concludes that Plaintiff cannot plausibly establish reasonable reliance on the alleged oral promise, and Defendant is entitled to judgment on Count II.

### d. Count III - Quasi Contract

Defendant argues that Plaintiff's quasi-contract claim is barred because the PLA is an express written agreement governing the same subject matter. (Def.'s Mot. Br. at 9-14.) Plaintiff responds that Rule 8 permits alternative pleading and that quasi-contract claims may proceed at the pleading stage where there is a dispute concerning the parties' obligations. (Pl.'s Opp. Br. at 17-21.)

The Court agrees with Defendant. Quasi-contract and unjust-enrichment claims are equitable remedies designed to prevent one party from retaining a benefit unjustly in the absence of an enforceable agreement. *See VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). But

quasi-contract liability generally will not be imposed where an express contract governs the identical subject matter. *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983).

To be sure, Rule 8 permits inconsistent pleading where the existence or validity of a contract is genuinely uncertain. *See* Fed. R. Civ. P. 8(d)(2)-(3); *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 416 (D.N.J. 2021). Courts therefore sometimes permit contract and unjust-enrichment claims to proceed simultaneously at the pleading stage where the parties dispute whether a binding agreement exists. *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733-34 (D.N.J. 2008).

That is not the situation here. Plaintiff affirmatively alleges that the PLA is a binding and enforceable agreement. (FAC ¶ 71.) Plaintiff's quasi-contract claim arises from the same produce relationship, the same alleged volume commitments, and the same alleged failure by Defendant to purchase the quantity of produce that Plaintiff planted and held. (FAC ¶¶ 65-69.) The PLA governs those issues. The agreement addresses pricing, products, delivery obligations, quality standards, and volume-related terms for the parties' produce transactions. (PLA §§ 1-8.) Plaintiff does not plead rescission, invalidity, or any independent benefit outside the parties' contractual relationship.

Courts applying New Jersey law routinely dismiss unjust-enrichment claims under similar circumstances. *See, e.g., Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008); *Gujja v. Inpatient Servs. of N.J., P.C.*, No. 21-19416, 2022 WL 2834998, *2-3 (D.N.J. July 20, 2022); *Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2023 WL 8437279, at *3 (D.N.J. Dec. 5, 2023). Because the parties' rights and obligations are governed by the PLA, Plaintiff cannot maintain a duplicative quasi-contract claim.

Accordingly, the Court finds that Defendant is entitled to judgment on Count III.

12

### e. Count IV - Breach of the PLA

Defendant argues that Plaintiff's breach-of-contract claim fails because the PLA expressly disclaims any guaranteed purchase volume unless the parties agree otherwise in an exhibit, and no exhibit contains such a guarantee. (Def.'s Mot. Br. at 15-16.) Plaintiff responds that the PLA references "pricing and volume" terms and that Exhibit A allegedly reflected specific volume commitments, creating ambiguity concerning Defendant's obligations. (Pl.'s Opp. Br. at 22-25.)

The Court finds that Count IV fails because the PLA's unambiguous language forecloses Plaintiff's theory of breach. Under New Jersey law, interpretation of a written contract is ordinarily a question of law for the Court. *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605 (2012). Courts enforce contracts according to their plain and ordinary meaning where the language is clear. *Kieffer v. Best Buy*, 205 N.J. 213, 223 (2011). And where allegations in a complaint are contradicted by the documents upon which the claims rely, the documents control. *Rapaport v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012).

Section 4 of the PLA expressly states that Defendant "makes no volume guarantee" and that product pricing is not contingent upon any required volume unless the parties agree otherwise in an exhibit. (PLA § 4.) Plaintiff alleges that Exhibit A contained a guaranteed volume commitment. (FAC ¶ 45.) But Exhibit A, which is integral to the FAC and properly considered on this Motion, contains product descriptions, pricing information, and related specifications—not guaranteed purchase percentages or minimum-volume obligations.

The Court rejects Plaintiff's argument that the PLA's general reference to "pricing and volume" arrangements creates ambiguity. Contracts must be read as a whole and interpreted in a manner that gives effect to all provisions. *Gil v. Clara Maass Med. Ctr.*, 450 N.J. Super. 368, 378

(App. Div. 2017). Here, the specific no-volume-guarantee language in Section 4 directly addresses the issue presented by Plaintiff's claim. Reading the agreement as Plaintiff proposes would effectively nullify Section 4. Courts applying New Jersey law avoid interpretations that render contract provisions superfluous. *See Concord Tech. Servs., LLC v. Sec. Am. Advisors, Inc.*, No. A-3216-11T2, 2013 WL 1629062, at *3 (N.J. Super. Ct. App. Div. Apr. 17, 2013).

Plaintiff's allegations confirm that it understood the PLA did not contain the eighty percent guarantee that it allegedly expected. Plaintiff specifically alleges that the PLA contemplated only thirty percent of Defendant's conventional greens volume and thirty-five percent of its organic greens volume. (FAC ¶ 46.) Plaintiff nevertheless executed the agreement. (FAC ¶ 52.) Having entered into an agreement that expressly disclaimed guaranteed volume commitments, Plaintiff cannot plausibly allege breach based on Defendant's failure to purchase a greater amount of produce than the PLA required.

Accordingly, Defendant is entitled to judgment on Count IV because the PLA unambiguously forecloses the contractual duty alleged by Plaintiff.

### f. Count V – PACA

Defendant argues that Plaintiff's PACA claim fails because PACA does not federalize ordinary disputes concerning anticipated purchasing levels and because Plaintiff does not plausibly allege fraudulent intent, false accounting, or failure to pay for produce actually delivered. (Def.'s Mot. Br. at 17-20.) Plaintiff responds that PACA extends beyond prompt-payment disputes and prohibits false or misleading statements and unfair conduct in produce transactions. (Pl.'s Opp. Br. at 26-31.)

The Court agrees that PACA is broader than a mere prompt-payment statute. Congress enacted PACA to promote fair dealing in the produce industry and to protect produce suppliers

14

from unfair practices by dealers, brokers, and commission merchants. *See* 7 U.S.C. § 499b; *Pacific Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 282 (3d Cir. 2006). The statute prohibits, among other things, making false or misleading statements "for a fraudulent purpose," failing to account and make prompt payment, and failing without reasonable cause to perform duties arising from produce transactions. 7 U.S.C. § 499b(4). Courts therefore recognize that PACA reaches certain deceptive or unfair commercial practices in the produce industry. *See The Produce Place v. U.S. Dep't of Agric.*, 91 F.3d 173, 174 (D.C. Cir. 1996); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202-03 (3d Cir. 1998).

But PACA does not transform every failed business expectation into a federal statutory claim. Plaintiff's PACA count is premised on the same allegations underlying its contract and promissory-estoppel theories—namely, that Defendant represented it would purchase approximately eighty percent of its produce from Plaintiff and later purchased substantially less. (FAC ¶¶ 85-90.) Those allegations sound in contractual nonperformance, not statutory fraud.

To the extent Plaintiff relies on PACA's prohibition against false or misleading statements made "for a fraudulent purpose," the FAC fails to plausibly allege fraud. Allegations sounding in fraud must satisfy Federal Rule of Civil Procedure 9(b). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997). Under New Jersey law, actionable fraud requires a material misrepresentation of a presently existing or past fact, knowledge of falsity, intent that another rely on the misrepresentation, reasonable reliance, and damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Statements concerning future conduct or future expectations generally are not actionable absent facts showing contemporaneous intent not to perform. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998).

15

Plaintiff pleads no facts supporting a reasonable inference that Defendant's representatives knew their statements were false when made or acted with fraudulent purpose. FAC alleges that Defendant representatives discussed expected purchasing levels during the bidding process and later purchased less produce than Plaintiff anticipated. (FAC ¶¶ 20-22, 35-57.) Plaintiff does not allege false accounting, failure to pay for produce actually delivered, improper rejection of accepted goods, dissipation of PACA trust assets, or any fraudulent scheme independent of the alleged purchasing expectations. The subsequently executed PLA further undermines the PACA claim. After the alleged oral assurances, the parties entered into a written agreement expressly providing that Defendant made no volume guarantee absent an exhibit. (PLA § 4.) Plaintiff alleges that Defendant purchased some produce under that agreement, albeit less than Plaintiff hoped. (FAC ¶ 57.) Those allegations do not plausibly establish conduct prohibited by PACA. Rather, they repackage Plaintiff's failed contractual theories in statutory terms.

Accordingly, the Court finds that the FAC fails to plausibly allege conduct actionable under PACA and thus, Defendant is entitled to judgment on Count V.

## V.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings will be **GRANTED**. Judgment will be entered in Defendant's favor on Counts I through V of the FAC. An Order consistent with this Opinion shall follow.

Dated:   May 14, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE